UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES ALEXANDER LOGAN,

                    Plaintiff,

v.

                                                    Case No. 3:18-cv-1358-MMH-JBT

WILLIAM HALL, et al.,

                    Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff James Alexander Logan, an inmate of the Florida penal system, initiated this action on November 15, 2018, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with exhibits (Doc. 1-1).[1] In the Complaint, Logan asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) William Hall; (2) Michael Epperly; (3) Hoss Shook; (4) Patrick Williams; (5) Charles Allen; (6) Christopher Cole; (7) Colin Williams; (8) John

---

[1] In referencing documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

M. Palmer; and (9) Troy Brady.[2] He asserts various claims all of which relate to a May 13, 2016 cell extraction while he was in the custody of the Florida Department of Corrections (FDOC). See generally Complaint. As relief, he requests monetary damages and injunctive relief.

This matter is before the Court on Defendants' Motion for Summary Judgment (Motion; Doc. 84). They submitted exhibits in support of the Motion. See Docs. 84-2; 84-3; 84-5 through 84-7; 85; 85-1. With the Court's permission, see Order (Doc. 87), Defendants filed digital video discs under seal. See Defendants' Exhibits to Be Filed Under Seal (Doc. S-88); Def. Exs. F through K (handheld video); L, M (fixed wing video). The Court advised Logan of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order (Doc. 5); Summary Judgment Notice (Doc. 86). Logan filed a response in opposition to the Motion. See Response in Opposition to Defendants' Motion for Summary Judgment (Response; Doc. 90). The Motion is ripe for review.

---

[2] The Court dismissed Logan's medical malpractice and Eighth Amendment claims against Dr. Ong and directed the Clerk to terminate Ong as a Defendant in the case. See Order (Doc. 64) at 14.

2

## II. Plaintiff's Allegations[3]

In his Complaint, Logan asserts that Defendants Shook, P. Williams, Allen, Cole, and C. Williams, as members of a five-man cell extraction team, assaulted him when they removed him from his cell on May 13, 2016, which resulted in head and hand injuries. See Complaint at 7, 9-12; Doc. 1-1 at 1-3. Additionally, he states that Defendant Palmer authorized the cell extraction, and Hall directed the team to remove Logan from the cell. See Complaint at 9-12. According to Logan, Defendants Hall and Epperly failed to intervene to stop the unnecessary force associated with the cell extraction, see id. at 8; Doc. 1-1 at 2, and Defendant Brady conspired with others and falsified documents to cover up the wrongdoing, see Complaint at 11; Doc. 1-1 at 3.

According to Logan, he was in a self-harm observation status (SHOS) cell, posed no threat to himself or the officers, and was willing to submit to handcuffs, however, Hall ignored Logan's plea to allow him to "cuff up." Complaint at 14-15; Doc. 1-1 at 1. He describes the cell extraction team's assault as "vicious" and Hall's involvement as retaliatory and malicious due to

---

[3] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the facts recited here are drawn from the Complaint and may differ from those that ultimately can be proved.

a previous altercation he and Hall had on J-wing. Doc. 1-1 at 1-2. According to Logan, a team member hit him with a shield, which busted Logan's head and caused him to fall to the floor where the team members punched him with closed fists in the face and head. See id. at 1. He states that Defendant P. Williams twisted his left hand and broke his hand, pinkie finger, and knuckle. See Complaint at 7, 9, 13; Doc. 1-1 at 1-2. Additionally, he asserts that a team member unnecessarily covered his head and face with a spit shield to conceal his injuries. See Doc. 1-1 at 3. Logan avers that the FDOC transported him to a Jacksonville hospital where Dr. Ong rendered treatment. See Complaint at 12; Doc. 1-1 at 2.

### III. Summary of the Arguments

In the Motion, Defendants Allen, Brady, Cole, Epperly, Hall, Palmer, Shook, C. Williams, and P. Williams request dismissal of Logan's claims against them because Logan failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant lawsuit. See Motion at 53-68. They also maintain that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in their favor as to Logan's Eighth Amendment claims against them. See id. at 25-37. Additionally, Defendants assert that they are entitled to qualified immunity. See id. at 37-40. They also argue that Logan fails to state

a claim for assault or battery under Florida law, see id. at 40-43, that he fails to state claims for fraud, falsification of documents, or conspiracy against Defendant Brady, see id. at 43-51, and that he fails to state a claim for the wrongful authorization of the use of force against Defendant Palmer, see id. at 51-53.

In his Response, Logan contends that he did sufficiently exhaust his administrative remedies. See Response at 8. He also asserts that Defendants are not entitled to summary judgment in their favor. See generally Response. Additionally, Logan maintains that he is entitled to summary judgment in his favor as to his Eighth Amendment claims against Defendants because they failed to refute the facts in the affidavit he attached to his Complaint. See id. at 1, 4, 12.

## IV. Exhaustion of Administrative Remedies

### A. Motion to Dismiss Standard

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citation omitted). In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the

5

complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## B. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Logan is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024 (emphasis in original).

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

As such, the United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Logan] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541

9

F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam). "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

### C. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member responsible

for the specific problem at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to

the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or he did not provide the required attachments. See FLA. ADMIN. CODE r. 33-103.014(1).

### D. Logan's Exhaustion Efforts

Defendants maintain that Logan failed to exhaust his administrative remedies as to the claims in this action before filing his § 1983 lawsuit. See

Motion at 53-68.[6] They submitted the Declaration of FDOC Correctional Sentence Specialist Lisa Vaughn (Vaughn Decl.), see Doc. 84-7 at 1, and Logan's relevant grievances with the FDOC's responses, see id. at 2-19. Vaughn states in pertinent part:

> I was asked by the Office of the Attorney General to review the available grievance[] records for inmate James Logan (DC# Y00683) from May 13, 2016 through November 15, 2018, regarding a use of force incident occurring on May 13, 2016 and subsequent internal affairs investigation. The records reflect that inmate James Logan filed one informal grievance log number 205-1605-0547. The records reflect that inmate James Logan filed seven formal grievances log numbers 1605-205-200, 1[6]06-213-331, 1606-213-205, 1606-213-200, 1608-213-107, 1608-213-242, 1612-[]230-189. A true and correct copy of the applicable grievances [is] attached to this declaration.

Vaughn Decl. at 1, ¶ 3. In the Complaint, Logan asserts that he submitted a grievance on May 18, 2016, at Florida State Prison (FSP), but never received a response. See Complaint at 12; Doc. 1-1 at 3. Nevertheless, he maintains that he sufficiently exhausted his administrative remedies before filing this lawsuit because he submitted a formal grievance (log number 1606-213-205) to the Warden on June 20, 2016, and the FDOC advised that it had forwarded his allegations to the Office of the Inspector General (OIG). See Response at 8; see

---

[6] While Defendants have raised the exhaustion defense in a summary-judgment motion under Rule 56, rather than a Rule 12 motion, the Court must treat the motion as one seeking dismissal. See Bryant, 530 F.3d at 1374-75.

also Complaint at 20; Doc. 1-1 at 3 (citing Doc. 1-1 at 14).

The documents attached to Logan's Complaint and Defendants' Motion reflect that Logan submitted the following grievances. Logan submitted a formal grievance (log number 1605-205-200, dated May 17, 2016) to the Warden on May 19, 2016. See Doc. 84-7 at 3-4. In the emergency medical grievance, Logan complained about the May 13, 2016 (4:30 p.m. through 5:45 p.m.) involuntary medical treatment, including an emergency treatment order (ETO) and psychiatric medications. See id. The FDOC denied the grievance on June 3, 2016, stating that the nurse obtained an ETO from an on-call psychiatrist. See Doc. 84-7 at 2.

Next, Logan submitted another formal grievance (log number 1606-213-331, dated June 15, 2016) to the Warden on June 16, 2016. See Doc. 84-7 at 7-9. In the grievance, he blamed FSP medical staff for missing documents and false notations in his medical records and asserted that the staff refused to give him medications that the hand surgeon had ordered on May 14, 2016. See id. The FDOC returned the grievance without action on June 30, 2016, because it addressed more than one issue, and advised Logan that he must file a separate form for each complaint. See Doc. 84-7 at 6. Logan submitted another formal grievance (log number 1606-213-200, dated June 19, 2016) to the Warden on June 20, 2016. In this grievance, he challenged the FDOC's issuance of a

14

disciplinary report (DR) for battery of an officer on May 13, 2016 and asserted that the DR team denied him due process of law on June 17, 2016. See Doc. 84-7 at 11. The FDOC denied the grievance on July 1, 2016, stating that Logan failed to present evidence that warranted overturning the DR. See Doc. 84-7 at 10.

On June 20, 2016, Logan submitted a fourth formal grievance (log number 1606-213-205, dated June 19, 2016) to the Warden. See Docs. 1-1 at 14; 84-7 at 13. In the grievance, he complained about the cell extraction team's excessive use of force on May 13, 2016, the OIG investigation, the cover up, and document falsification. See id. On June 20, 2016, the FDOC returned the grievance without action, stating in pertinent part:

> Your request for administrative remedy is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, and Inmate Grievance Procedure. The rule requires that you first submit an informal grievance at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of the informal grievance, or an acceptable reason for not following the rules. It is noted your allegations were referred to the Office of the Inspector General for appropriate action. That may or may not result in a personal interview with you.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit an informal grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

> Based on the foregoing information, **your grievance is returned without action.**

Doc. 1-1 at 13; 84-7 at 12 (emphasis added).

Less than one month later, Logan submitted an informal grievance to Grievance Coordinator Key. See Doc. 1-1 at 8, dated July 17, 2016. In the grievance, he inquired about the status of his DC1-303 formal grievance, dated May 17, 2016, concerning the May 13, 2016, use of force that Padgett allegedly picked up on May 18, 2016, and asked why FSP Grievance Coordinator Dobbs never responded. Id. On July 20, 2016, Key responded that a "review of the log does not reflect a grievance filed on May 17." Id. Logan also submitted an informal grievance about the taking of his shoes, t-shirt, and legal property on May 13, 2016. See Doc. 84-7 at 5, log number 205-1605-0547, dated May 18, 2016. The FDOC advised him that his personal belongings were in the property room. See id.

On August 8, 2016, Logan submitted a fifth formal grievance (log number 1608-213-107, dated August 7, 2016). See Docs. 1-1 at 10; 84-7 at 15. In the grievance, he asserted that he never received a response to his May 18, 2016 grievance related to the May 13, 2016 (6:30 p.m. through 7:15 p.m.) incident involving Captains Hall and Epperly. See id. The FDOC denied the grievance on August 10, 2016, stating that a review of the formal grievance log beginning

16

May 1, 2016, "does not reflect any formal grievances filed on May 18, 2016." Docs. 1-1 at 9; 84-7 at 14. He appealed to the FDOC Secretary, on August 13, 2016, <u>see</u> Doc. 1-1 at 12, log number 16-6-34451, and S. Milliken denied the appeal on September 9, 2016, stating that the institution's response appropriately addressed his concerns, <u>see</u> Doc. 1-1 at 11.

Next, Logan submitted a formal grievance (log number 1608-213-242, dated August 14, 2016) on August 16, 2016. <u>See</u> Docs. 1-1 at 18; 84-7 at 17. In the grievance, he asserted that Dr. Ong performed surgery on May 14, 2016, complained that he was unable to bend his pinkie finger when Dr. Ong removed the cast on August 11, 2016, and asked to see another hand specialist to correct the deficiency. <u>See</u> <u>id.</u> Dr. Perez denied the grievance on September 1, 2016, advising Logan that a medical consultation was pending. <u>See</u> Docs. 1-1 at 17; 84-7 at 16. Logan appealed to the FDOC Secretary, <u>see</u> Doc. 1-1 at 16, log number 16-6-39902, and Health Services Director Tom Reimers denied the appeal on December 2, 2016, stating that Dr. Perez's response appropriately addressed the issue, <u>see</u> Doc. 1-1 at 15. Logan submitted a seventh formal grievance (log number 1612-230-189, dated December 28, 2016) on December 29, 2016. <u>See</u> Doc. 84-7 at 19. In the grievance, he asked to see a medical specialist concerning a shoulder injury that resulted from the May 13, 2016

incident. See id. The FDOC denied the grievance on January 17, 2017, stating there was "no indication" he was denied medical care. Doc. 84-7 at 18.

As to the initial step in the two-part process for deciding a motion to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Logan's view of the facts as true, a dismissal of the Eighth Amendment claims against Defendants for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes findings of fact.

A prisoner must exhaust administrative remedies as to each claim that he seeks to present in court. See Jones, 549 U.S. at 219-20. Thus, to fully exhaust, Logan was required to complete the three-step process with respect

18

to each of his Eighth Amendment claims against Defendants before filing the instant § 1983 lawsuit. Defendants assert that there "is <u>no</u> record of [Logan] filing a timely informal grievance" concerning the May 13, 2016 excessive-use-of-force incident, and the "only informal grievance" Logan filed was log number 205-1605-0547 related to the taking of his shoes. Motion at 60 (citing Doc. 84-7 at 5). They contend that Logan's failure to timely file an informal grievance within twenty days of the May 13, 2016 incident is "fatal to [his] claims" since he is required to properly exhaust his administrative remedies by completing the three-step process prior to filing his lawsuit. <u>Id.</u>

Logan does not contend that he filed an <u>informal</u> grievance as to his claims against Defendants. Nor does he submit a copy of a timely-filed informal grievance related to the May 13, 2016 incident involving Defendants. Instead, in a DC6-236 informal grievance, Logan asserted that he wrote a DC1-303 formal grievance on May 17, 2016, concerning the May 13, 2016 excessive-use-of-force incident that happened from 6:30 p.m. to 7:15 p.m.; Ms. Padgett picked it up on May 18, 2016; and FSP grievance coordinator Dobbs never responded to the grievance. <u>See</u> Doc. 1-1 at 8.[7] The record reflects that Logan inquired about the status of the above-described formal grievance and the FDOC's

---

[7] Defendants refer to Logan's Inmate Request as a "letter" to the grievance coordinator. Motion at 61.

handling of it, see Doc. 1-1 at 8, 10, 12, however, the FDOC maintained that there was no record of the formal grievance. Logan describes the missing grievance as a DC1-303 formal grievance, not an informal grievance. As such, the referenced grievance would not have satisfied the first step of the exhaustion process nor qualified as a proper bypass of the informal-grievance step. Notably, Logan knew how to properly bypass the informal-grievance step when he submitted emergency medical grievances that the FDOC addressed.

Nevertheless, Logan contends that the sole submission of his formal grievance (log number 1606-213-205) on June 20, 2016, completed the exhaustion process because the FDOC advised him that it had forwarded his allegations related to the May 13, 2016 incident to the OIG. Logan's assertion is flawed. First, he improperly bypassed the informal-grievance step when he filed the formal grievance against the OIG. See Doc. 84-7 at 13; Doc. 1-1 at 14. The FDOC returned the grievance without action because Logan had not complied with the FDOC rules. See Docs. 1-1 at 13; 84-7 at 12 ("The rule requires that you first submit an informal grievance at the appropriate level at the institution. You have not done so[,] or you have not provided this office with a copy of the informal grievance, or an acceptable reason for not following the rules.").[8] Taking Logan's allegations as true, see Doc. 1-1 at 3, 14, as the

---

[8] See FLA. ADMIN. CODE r. 33-103.014(1).

Court must, the Court finds that the OIG's investigation began well before Logan submitted the formal grievance. It was the May 20th incident report that prompted the OIG investigation, not Logan's June 20th formal grievance. See Doc. 85-1 at 4 ("After review of the video[,] it does not substantiate inmate Logan's allegations. Forward to IG's Office.").

Defendants have carried their burden of showing that Logan failed to exhaust his administrative grievance remedies before filing the instant § 1983 lawsuit. Logan simply failed to complete the three-step process with respect to his claims against Defendants before filing his case. Therefore, upon review of the parties' submissions and the file, the Court finds that this case is due to be dismissed without prejudice for Logan's failure to exhaust his claims against Defendants Allen, Brady, Cole, Epperly, Hall, Palmer, Shook, C. Williams, and P. Williams in this action. As such, Defendants' Motion is due to be granted as to their assertion that Logan failed to properly exhaust his claims against them.

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendants Allen, Brady, Cole, Epperly, Hall, Palmer, Shook, C. Williams, and P. Williams' Motion (Doc. 84) is **GRANTED** to the extent

Defendants seek dismissal for Logan's failure to exhaust his administrative remedies.

2.     This case is **DISMISSED** without prejudice for Logan's failure to exhaust.[9]

3.     The Clerk shall enter judgment dismissing this case, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of August, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 8/17
c:
James Alexander Logan, FDOC #Y00683
Counsel of Record

---

[9] It appears that the applicable four-year statute of limitations has run as to Logan's claims against Defendants.

22